In re George William FOGELSONG, d/b/a G–N–N Discount, Debtor.

AMERICAN WAY RENTALS, Plaintiff,

v.

George FOGELSONG, Defendant.

Bankruptcy No. 87–72165.
Adv. No. 88–7011.

United States Bankruptcy Court,
C.D. Illinois.

Feb. 26, 1988.

Robert B. Goldman, Springfield, Ill., for plaintiff.

Joseph Vigneri, Decatur, Ill., for debtor.

## OPINION

LARRY L. LESSEN, Chief Judge.

This matter is before the Court on a Petition for Reclamation (Lift of Automatic Stay) filed by Plaintiff American Way Rentals against the Debtor George Fogelsong, and the Debtor's Counter–Petition for Contempt for Violation of the Automatic Stay. A hearing was held on January 27, 1988. The relevant facts are as follows:

The Plaintiff is in the "rent to own" furniture business. On various dates between May 15, 1987, and December 4, 1987, the Debtor and Plaintiff executed eleven form agreements, each entitled "Lease Agreement with Ownership Option and Disclosure Statement."[1] Each of these lease agreements provided among other things a description of the leased property, available terms, an initial term of one week, payment amount, a "rent to own" option and right to renew. See Group Ex. A attached to Plaintiff's Petition. The Debtor had the right to renew the initial weekly term so long as he abided by the conditions of the agreement. Renewal was effectuated by making a renewal payment as per the agreement for a week, two weeks, half a month or one month, at the

---

1. Some of the agreements are signed by the Debtor's wife, Linda, and not the Debtor, but the Debtor does not contest that he is responsible for all eleven agreements.

Debtor's option. It was provided that failure to renew would result in automatic termination of the lease. Upon timely renewals for a specified period, corresponding with the Plaintiff's depreciation schedule for the leased property, the Debtor was to obtain ownership of the property automatically. The form agreement further provided an early purchase option, by which the Debtor was entitled to purchase the property, applying 50% of payments made, with the purchase price determined according to a declining balance schedule. Neither insurance nor deposit was required of the Debtor. Full warranties applied, and the Debtor was not responsible for repairs. The agreements contained no default provision or acceleration clause.

On one agreement, a handwritten notation indicated "Landlord took over purchase." Gary Younker, the company representative who signed the agreements, testified that he meant by that notation to indicate that the Debtor assumed the payments. He stated that the word "purchase" was intended to mean "rental for the term of the lease."

By the time the Debtor signed the eleventh agreement, on December 4, 1987, he was paying $147.27 per week on the various items supplied by the Plaintiff. The property included bedroom, living and dining room furniture, a dishwasher, range and audio equipment. Some was new, some used.

In December, 1987, the Debtor defaulted on all of the agreements, by failing to pay as agreed. The Plaintiff stipulated that it had accepted late payments in the past from the Debtor without terminating the agreements.

On December 29, 1987, the Debtor filed a Chapter 13 bankruptcy petition, retaining possession of the property in question. Subsequent to the Debtor's filing, a representative of the Plaintiff telephoned the Debtor. He threatened to terminate the agreements and demanded that the Debtor relinquish possession of the property. On January 11, 1988, the Plaintiff sent a form letter to the Debtor, demanding immediate return of the property and threatening to file criminal charges should the Debtor fail to comply.

The Plaintiff now belatedly seeks a lift of the stay to enable it to reclaim the property in the possession of the Debtor. The Debtor maintains that the leases in question are really sales by retail installment contract, in which the Plaintiff retains only a purchase money security interest.

■ Several factors are deemed relevant in determining whether a transaction constitutes a lease or a sale. Among them are *the intent of the parties, the economic realities of the situation, the incidents of ownership,* whether there is any residual value for the lessor at the end of the lease term, and the presence or absence of a purchase option. *See, In re Airlift Intern., Inc.,* 70 B.R. 935 (Bankr.S.D.Fla.1987); *In re Loop Hospital Partnership,* 35 B.R. 929 (Bankr. N.D.Ill.1983). Section 1–201(37) of the Uniform Commercial Code is instructive on the issue, providing in pertinent part:

Whether a lease is intended as security is to be determined by the facts in each case; however, a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and b) *an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.* (Emphasis added).

■ Having carefully considered the above factors, the Court finds that the agreements at issue are in the nature of security agreements rather than leases. While the initial term of each agreement is one week, the additional provisions clearly contemplate a "term" of longer duration, culminating, absent financial difficulties on the part of the "lessee", in a transfer of ownership by exercise of either the early purchase option or the "rent to own" option. Compliance with the terms of the "rent to own" provision vests ownership automatically in the "lessee," *without additional consideration* required. The

Plaintiff acknowledged that the payments for the longer term, specified in the "rent to own" provision, correspond to the fair market value of the property plus interest, and that the property has no residual value for the Plaintiff by the end of the longer term. Thus, upon compliance with certain terms of the lease, the lessee becomes the owner of the property for no additional consideration. In keeping with the UCC, the lease is one intended for security. The Debtor has equity in the property.

The economic realities of the situation and evidence of intent of the parties further support this conclusion. The Plaintiff stresses that the Debtor always had the option to walk away from the agreement as a basis for classifying it as a lease. The Court finds this fact unpersuasive, given the nature of the property and the options included in the agreement. Who in his right mind would invest nearly $150 per week in household furnishings, knowing they will automatically be his after a set number of weeks, without intending to keep paying to accomplish that result? The Plaintiff's own agent used the word "purchase" to describe the Debtor's act in assuming one of the agreements, defining the word as meaning rental for the term of the lease. The Plaintiff had allowed the Debtor a grace period in making payments, despite the fact that the agreement expressly provided there was to be no grace period. The Court finds that both the Plaintiff and the Debtor intended that the payments continue until the property was paid for. To intend otherwise would make no economic sense under the circumstances presented to the Court. This intent is consistent with execution of a security agreement, not a lease.

Finally, the Court notes that while some of the incidents of ownership are, as the Plaintiff points out, characteristic of a lease, these factors are not conclusive. It is true that the agreement does not require the Debtor to put down a deposit, carry insurance or pay taxes, that title remains in the Plaintiff unless/until the early purchase option or automatic ownership right is exercised, that warranties apply, and that the Debtor is not obligated to keep paying. But the costs of these privileges are in all likelihood borne by the Debtor as part of the rental payments. After all, no good businessman would fail in setting his prices to cover all of his costs. This is just more economic reality. The agreements in question are masked as leases but are in fact security agreements, akin to retail installment contracts.

The Plaintiff's Petition for Reclamation (Lift of Stay) is therefore denied. The issue of adequate protection was not argued by the parties and is therefore not before the Court.

The Court is reserving for a later ruling the issue of attorney fees for both parties and whether or not the Plaintiff violated the terms of the Automatic Stay.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.