**In re Joseph R. FRADY and Janet M. Frady, Debtors.**

**Bankruptcy No. SH–B–91–40330.**

United States Bankruptcy Court, W.D. North Carolina, Shelby Division.

Dec. 17, 1991.

O. Max Gardner, III, Shelby, N.C., for debtors.

Tamara L. Kettner, Moore & Van Allen, Charlotte, N.C., for Rent–A–Center.

ORDER SUSTAINING RENT–A–CEN-TER'S OBJECTION TO CONFIRMA-TION OF DEBTOR'S PLAN AS PRO-POSED AND APPROVING DEBT-ORS' PLAN AS MODIFIED

MARVIN R. WOOTEN, Bankruptcy Judge.

This matter came before the undersigned United States Bankruptcy Judge on Rent–A–Center, Inc.'s ("RAC") objection to con-firmation of Debtors' chapter 13 plan and Debtors' response thereto. A hearing was held on this matter on September 26, 1991. O. Max Gardner, III appeared for the Debt-ors, Sharon L. Moylan and Tamara L. Kett-ner appeared for RAC.

The Court, after reviewing the pleadings, hearing the arguments of counsel and testi-mony, and reviewing the Court file hereby makes the following findings of fact and conclusions of law:

1. The debtor, Janet M. Frady, entered into two rental agreements with RAC. On March 23, 1991, the debtor entered into an agreement for the rental of a JVC two head VCR with on screen programming. On May 31, 1991, the debtor entered into an agreement for the rental of a Sears Kenmore regular capacity washer.

2. The initial term of the VCR rental agreement was one week. The initial week's rent was $9.99. Upon the expira-tion of the initial term, the debtor, Janet M. Frady, could renew the agreement for an additional one week term by paying an additional week's rent. If the debtor con-tinued to renew the agreement for addition-al weekly terms, she would have the option, after 69 weeks, to purchase the property for its fair market value, subject to a provi-sion that the purchase price would not ex-ceed $89.91. If, at the end of any weekly term, the debtor did not wish to renew the agreement, she could terminate the agree-ment without any further obligation (other than the payment of any backrent that might be owed) simply by arranging for RAC to pick up the merchandise.

3. The initial term of the Washer rental agreement was also one week. The initial week's rent was $18.99. Upon the expira-tion of the initial term, the debtor, Janet M. Frady, could renew the agreement for an additional one week term by paying an additional week's rent. If she continued to renew the agreement for additional weekly terms, she would have the option, after 82 weeks, to purchase the property for its fair market value, subject to a provision that the purchase price would not exceed $116.91. If, at the end of any weekly term, the debtor chose not to renew the agree-

ment, she could terminate the agreement without any further obligation (other than the payment of any backrent that might be owed) simply by arranging for RAC to pick up the merchandise.

4. The debtors have listed RAC as a secured creditor in their bankruptcy schedules. For the VCR, the debtors have proposed payment over 60 months of $5.56 per month. For the washer, the debtors have proposed payment over 60 months of $11.13.

5. The debtors rely on *In re Shelby*, 127 B.R. 682 (Bankr.N.D.Ala.1991), for the proposition that the rental agreements are "disguised sales."

6. The rental agreements in *Shelby* differ from the rental agreements signed by the debtor, Janet M. Frady. The *Shelby* agreements allowed the debtors to acquire ownership after a specified number of weeks for no additional consideration. The agreements signed by the debtor allowed the debtor to acquire ownership after a specified number of weeks by exercising a purchase option equal to the fair market value of the goods.

7. Additionally, shortly after *Shelby* was decided, the Alabama legislature overruled the court's holding by amending the Section 1–201(37) of the Alabama Uniform Commercial Code so that rental-purchase agreements are specifically excluded from the definition of "security interest." 1991 Alabama Senate Bill No. 96.

8. N.C.Gen.Stat. § 25–1–201(37) defines "security interest" as "an interest in personal property or fixtures which secures payment of performance of an obligation." Without an obligation there can be no "security interest." If the lessee has the right to terminate a lease at any time with no further obligation, a "security interest" cannot exist and the lease will be treated as à "true" lease. *Matter of Marhoefer Packing Co., Inc.*, 674 F.2d 1139, 1142–43 (7th Cir.1982); *In re Huffman*, 63 B.R. 737, 738–39 (Bankr.N.D.Ga.1986).

9. Because the debtor, Janet M. Frady, could terminate the agreement at any time with no further obligation to continue paying rent, the rental agreement is a "true" lease under N.C.Gen.Stat. § 25–1–201(37).

10. The debtors further argue that the agreements should be characterized as sales because the agreements obligate RAC to transfer ownership for "nominal consideration."

11. A terminable lease with an option to purchase may be characterized as a "sale" under the Retail Installment Sales Act if the contract obligates the lessor to transfer ownership for "nominal consideration." "Nominal consideration" is defined as "no more than ten percent (10%) of the cash price of the property" at the time the agreement is entered into. N.C.Gen.Stat. § 25A–2(b). "Cash price" is defined as "the price at which the goods or services are offered for sale by the seller to cash buyers in the ordinary course of business." N.C.Gen.Stat. § 25A–7.

12. The option purchase price for the VCR is $89.91. Testimony established that the price at which RAC would sell the VCR for cash in the ordinary course of its business was approximately $467.53. Because the option purchase price is greater than ten percent of the cash price, the purchase price is not nominal and the VCR agreement may not be characterized as a "sale" under the Retail Installment Sales Act.

13. The option purchase price for the Sears Kenmore washer is $116.91. Testimony established that the price at which RAC would sell the washer for cash in the ordinary course of its business was approximately $709.25. Because the option purchase price is greater than ten percent of the cash price, the purchase price is not nominal and the washer agreement may not be characterized as a "sale" under the Retail Installment Sales Act.

14. An executory contract or lease must either be accepted according to its terms and brought current or it must be rejected. 11 U.S.C. §§ 365, 1322(b)(7). A Chapter 13 plan may not be confirmed if it improperly treats a "true" lease as a disguised sale.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED,

1. The Debtors' plan as originally proposed it not confirmed.

2. The Agreements are "true leases" and must be assumed according to their terms or rejected.

3. RAC will be allowed an administrative claim in an amount equal to the rental payments which were not paid post-petition and prior to the hearing.

4. The Debtors will reject the leases and reduce their plan payments to $120.00 per month. The Debtors' plan is confirmable upon these terms.