**In re Pauline M. MEEKS, Debtor.**

**Bankruptcy No. BK 95–40734.**

United States Bankruptcy Court,
S.D. Illinois.

Dec. 15, 1995.

Mark S. Johnson, Cairo, IL, for RTO Rents.

Michael Katz, Collinsville, IL, for debtor.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

At issue in this chapter 13 proceeding is whether a written agreement between RTO Rents ("RTO") and debtor for the lease of a washer and dryer is a true lease subject to assumption or rejection under 11 U.S.C. § 365 or a security agreement. In her plan, debtor treats RTO's claim as secured and proposes to pay RTO the sum of $500.00 (the alleged value of the property) plus interest at the rate of nine percent. RTO objects to confirmation of the plan on the basis that the agreement at issue is a lease that must be assumed or rejected.

## FACTS

On May 31, 1995, debtor and RTO executed a written document entitled "Rental Purchase Agreement," pursuant to which debtor agreed to rent a used washer and mini-dryer. The term of the agreement is one month. The agreement provides that debtor can make either weekly payments of $19.07 or monthly payments of $76.28. Debtor is not obligated to renew the agreement after the first month, but may do so "weekly or monthly by making another payment before [the] paid term expires." Rental Purchase Agreement at ¶ 8. Debtor can terminate the agreement at any time by returning the property or by not renewing the agreement before the end of any paid rental period.

The agreement also grants debtor the option of purchasing the property in one of two ways. Debtor can become the owner of the property by making an initial payment of $83.78,[1] plus seventy-four additional weekly payments, for a total amount of $1,494.92. In the alternative, debtor can purchase the property through an early purchase option. The purchase price is computed by subtracting those rental payments already paid from the total dollar amount of the payments debtor must otherwise pay to acquire ownership ($1,494.92), and multiplying that difference by sixty percent. The early purchase option is available only during the first sixty-two weeks or first fourteen months of the agreement.

With respect to the question of ownership, the agreement also provides as follows:

EQUITY: You understand that we own the property until you buy it or get ownership as stated in this agreement. During the rental term, you do not have any ownership interest in the property at all. You do not have the right to a refund of any rental payments when this agreement is terminated.

Rental Purchase Agreement at ¶ 16.

## DISCUSSION

The existence, nature and extent of a security interest in property is governed by state law. *In re Powers*, 983 F.2d 88, 90 (7th Cir.1993) (citations omitted). Section 1–201(37) of the Illinois Uniform Commercial code, amended in 1991, provides:

(37) "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . .

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration

---

**1.** This figure is computed by adding together the monthly payment of $76.28 and a processing fee of $7.50.

the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease *not subject to termination by the lessee;* and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods;

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement; or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that:

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods;

(c) the lessee has an option to renew the lease or to become the owner of the goods;

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(e) the lessee has an option to become the owner of the goods for a fixed price

that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

810 ILCS 5/1–201(37) (emphasis added).[2]

■ Section 1–201(37) focuses on the economics of the transaction, not the intent of the parties. *In re Lerch,* 147 B.R. 455, 460 (Bankr.C.D.Ill.1992). The statute sets forth certain standards that must be considered in determining whether an agreement is a true lease. *In re Lerch* explains the manner in which these standards are to be applied:

> The initial portion of the first sentence of the second unnumbered paragraph contains the basic direction that the determination is made based on the facts of each case. The latter portion of the first sentence ... starting with the word "however" creates an exception to the basic direction that the determination is made on the facts of each case, as it provides that without looking at all the facts, a lease will be construed as a security interest *if a debtor cannot terminate the lease,* and if one of the four enumerated terms is present in the lease.
>
> Absent a mandated classification, the determination is based on the facts of the case. At this point the third unnumbered paragraph comes into effect. Focusing on the economics of the transaction, it states that a security interest is not created merely because it contains any of the five terms enumerated in the third unnumbered paragraph.

*Id.* at 460 (emphasis added).

■ The Court must first determine whether the agreement at issue is a security agreement as a matter of law under § 1–201(37). The Court finds that it is not. Paragraph fourteen of the agreement grants debtor an option to terminate the agreement at any time and specifically provides:

> not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.
> Ill.Rev.Stat. ch. 26, ¶ 1–201(37).

---

**2.** Amended section 1–201(37) became effective on January 1, 1992. It applies to the instant case since the agreement in question was executed in May 1995. Prior to its amendment, the statute provided, in pertinent part, as follows:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does

TERMINATION AND DEFAULT: You are not obligated in any way to renew this agreement or to buy the property. You can terminate this agreement by providing for the immediate return of the property to us or by not renewing this agreement before the end of any paid rental period. You agree to pay rent until the property is returned to us or until you own it as stated in this agreement. We may terminate this agreement if you fail to keep any of your agreements. We may notify you of termination in writing or by telling you.

Rental Purchase Agreement at ¶ 14. In light of this provision, the Court cannot say, as a matter of law, that the agreement constitutes a security agreement as defined in the second paragraph of § 1–201(37).

The Court, then, must evaluate the nature of the agreement by consideration of the following additional factors: (1) whether the lessee has an option to renew the lease or to become the owner of the property; (2) whether the useful life of the property exceeds the length of the term of the lease; (3) whether the amount of rent exceeds the fair market value of the property; and (4) whether the debtor is responsible for the payment of taxes, insurance and other costs incident to ownership. *See In re Marhoefer Packing Co., Inc.,* 674 F.2d 1139 (7th Cir.1982); *In re Spears,* 146 B.R. 772 (Bankr.S.D.Ill.1992).

■ While the agreement does grant debtor a renewal option, as well as an option to become the owner of the property, § 1–201(37) provides that "[a] transaction does not create a security interest merely because it provides that ... the lessee has an option to renew the lease or to become the owner of

the goods...." 810 ILCS 5/1–201(37). In addition, the Seventh Circuit has held that the inclusion of an option to purchase does not necessarily create a security agreement where the lessee also has the right to terminate the agreement at any time. *In re Marhoefer,* 674 F.2d at 1143. This holding was reaffirmed in *In re Powers,* 983 F.2d 88 (7th Cir.1993), a case which, like the present one, involved a "rent to own" agreement. The *Powers* court concluded that "even though the lessee can acquire the goods at the end of the lease's term, the lessee is under no obligation to make the payments that will allow him to exercise the option." *Id.* at 91.[3]

With regard to the second factor, the courts have generally held that when the useful life of the property exceeds the term of the lease, the agreement is a true lease. *See, e.g., In re Marhoefer,* 674 F.2d at 1145. *See also* 1D *Secured Transactions Under U.C.C.* § 30.02[4][c][vii] at 30–74. As explained by the court in *Marhoefer:*

> An essential characteristic of a true lease is that there be something of value to return to the lessor after the term. Where the term of the lease is substantially equal to the life of the leased property such that there will be nothing of value to return at the end of the lease, the transaction is in essence a sale.

*In re Marhoefer,* 674 F.2d at 1145 (citations omitted).[4] The parties in the present case failed to present any evidence regarding the useful life of the property. In the absence of such evidence, the Court can only assume that the useful life of the washer and dryer exceeds the initial one month term of the agreement. *See In re Spears,* 146 B.R. at

---

**3.** While both *Marhoefer* and *Powers* were decided under the prior version of § 1–201(37), the Seventh Circuit's analysis of the effect of a lessee's right to terminate is both relevant and applicable to the case at bar. *See also In re Morris,* 150 B.R. 446, 449 (Bankr.E.D.Mo.1992) (because debtors were not obligated by the terms of the rental purchase agreement to make payments until such time as the option to own arose, agreement could not be a conditional sale or a lease intended as security).

**4.** This test is often expressed in terms of "residual value." In other words, there must be something of value to return to the lessor at the expiration of the lease. If not, "the transaction

functions exactly the same as an installment sale ... and whether there are any tangible remains to return to the lessor should be irrelevant." 1D *Secured Transactions Under U.C.C.* at 30–74.

This principle is now codified in § 1–201(37) of the Uniform Commercial Code. Specifically, the second paragraph of that section provides that a transaction creates a security interest "if the consideration the lessee is to pay the lessor ... is an obligation for the term of the lease not subject to termination by the lessee and (a) *the original term of the lease is equal to or greater than the remaining economic life of the goods.*" 810 ILCS 5/1–201(37) (emphasis added).

775 (useful life of washer, dryer, television and stereo exceeded initial one week term of agreement, thus supporting court's finding that agreement was a lease).[5] Consideration of this factor, therefore, suggests that the agreement in question is a true lease.

The Court must also consider whether the amount of rent exceeds the fair market value of the property. Generally, "[i]f the total rentals payable under the lease equal or exceed the purchase price, then a security agreement is indicated." 1D *Secured Transactions Under U.C.C.* § 30.02[4][c][v] at 30–66. However, this "test" has been sharply curtailed by the amendments to § 1–201(37). The third paragraph of that section provides in pertinent part:

> A transaction does not create a security interest merely because it provides that:
>
> (a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or greater than the fair market value of the goods at the time the lease is entered into....

810 ILCS 5/1–201(37). Therefore, it can no longer be assumed that because the rental payments equal or exceed the purchase price, or fair market value, the agreement is necessarily a security agreement. Moreover, in the present case, the term of the agreement is one month, and one month's rent—the amount debtor was obligated to pay—is substantially less than the fair market value of the property.[6] Arguably, the total rent paid by debtor *could* exceed the fair market value of the property (if, for example, debtor continues to make payments for a period of seventy-four weeks in order to acquire ownership). However, that factor alone does not indicate that the agreement at issue is a security agreement.

**5.** Even assuming *arguendo* that the term of the lease is for seventy-four weeks—the length of time debtor must make payments in order to acquire ownership under the first purchase option—the Court assumes, in the absence of further evidence, that the useful life of the property exceeds even that period of time.

**6.** The agreement states that the cash prices of the washer and dryer are, respectively, $431.57 and $345.60. In the absence of other evidence, the

Finally, although debtor is responsible for the payment of taxes and carries the risk of loss for damage to the property, "these terms are not sufficient per se to create a security interest." *In re Lerch,* 147 B.R. at 461.[7] As explained by the *Marhoefer* Court, "[c]osts such as taxes, insurance and repairs are necessarily borne by one party or the other. They reflect less the true character of the transaction than the strength of the parties' respective bargaining positions." *In re Marhoefer,* 674 F.2d at 1146.

Accordingly, for the reasons stated, the Court finds that the agreement in question is a true lease. The objection to confirmation filed by RTO is sustained.

Court assumes that these are the fair market values of the property.

**7.** In addition, while debtor carries the risk of loss for damage to the property, the agreement provides that RTO "will provide service for the property covering normal repairs at no additional charge...." Rental Purchase Agreement at ¶ 15.