Present:  All the Justices

C.F. GARCIA ENTERPRISES, INC.,
T/A C.F. GARCIA & ASSOCIATES

v.  Record No. 960616    OPINION BY JUSTICE BARBARA MILANO KEENAN
                              January 10, 1997
ENTERPRISE FORD TRACTOR, INC.

FROM THE CIRCUIT COURT OF YORK COUNTY
Samuel T. Powell, III, Judge

In this appeal, we consider whether a contract created a security interest or a lease.

In April 1989, C.F. Garcia Enterprises, Inc. (Garcia), and Enterprise Ford Tractor, Inc. (Enterprise), entered into a contract titled "Equipment Lease Agreement."  The contract provided for Garcia to lease a 1979 Ford model 555 Tractor-Loader-Backhoe (backhoe) from Enterprise in exchange for monthly rental payments totalling $17,250.  The contract provided that when the lease terminated on July 31, 1990, Garcia retained the option to purchase the backhoe for $1 upon informing Enterprise in writing that it intended to exercise this option.

The contract also provided that if Garcia failed to make any rental payment when due, Enterprise could demand the entire balance of the rental payments.  The default provision also stated that, in the event Garcia failed to make a rental payment when due, Enterprise could demand the surrender of the equipment and repossess it.

It is undisputed that Garcia was late in making each monthly payment, and that Enterprise never demanded the entire balance due, nor the surrender of the backhoe.  The final payment, due July 1, 1990, was mailed on August 3, 1990, and was cashed by

Enterprise on August 9, 1990.  Garcia did not inform Enterprise in writing that it intended to exercise its option to purchase the backhoe, nor did it tender $1 to exercise that option.

On August 5, 1990, Enterprise took possession of the backhoe from one of Garcia's work sites.  Enterprise performed $1,532.31 of repairs on the backhoe, and sold it for $13,000, less selling expenses of $250.  Enterprise did not give Garcia prior notice of the sale.

Garcia later instituted this action against Enterprise alleging breach of contract, conversion, and violation of the Virginia Uniform Commercial Code (UCC).  Enterprise moved for summary judgment on the ground that Garcia had failed to make timely payments under the lease agreement, to give notice of its intent to purchase the backhoe, or to tender the required $1 consideration.  The trial court granted the motion for summary judgment and entered final judgment for Enterprise.

On appeal, Garcia contends that the contract provision allowing Garcia to purchase the backhoe for $1 establishes, as a matter of law, that the contract was a security agreement rather than a lease.  Thus, Garcia asserts, Enterprise was not entitled to repossess the backhoe based on Garcia's late payments, but was limited to pursuing a secured party's remedies under the UCC.

In response, Enterprise argues that the plain language of the contract created a lease between the parties, and that Garcia's failure to make timely payments and exercise its option

to purchase the backhoe extinguished its right to obtain full title to the equipment at the termination of the agreement. We disagree with Enterprise.

Since the interpretation of a contract is a question of law, we are not bound by the trial court's conclusions on this issue, and we are permitted the same opportunity as the trial court to consider the contract language. Langman v. Alumni Ass'n of the Univ. of Virginia; 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994); Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984). To resolve the interests of the parties in the backhoe, we must determine whether the contract was a lease or a security agreement.

Article 9 of the UCC governs any transaction, "regardless of its form," which is intended to create a security interest in personal property. Code § 8.9-102. Thus, we turn to the UCC definition of "security interest," which is applicable throughout the Commercial Code. In defining the term "security interest," Code § 8.1-201(37) provides, in relevant part:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. [Emphasis added.]

We have not previously addressed this statutory provision. The plain language of the statute creates a security interest in

property as a matter of law if the parties' contract allows the lessee to become the owner of the leased property for nominal or no additional consideration upon compliance with the terms of the lease.[1]  Further, we note that this construction is in accord with the holdings of several courts that have considered the issue.  See, e.g., Interpool Ltd. v. Char Yigh Marine (Panama) S.A., 890 F.2d 1453, 1459 (9th Cir. 1989); Percival Construction Co. v. Miller & Miller Auctioneers, Inc., 532 F.2d 166, 171 (10th Cir. 1976); Stanley v. Fabricators, Inc., 459 P.2d 467, 469-70 (Alaska 1969); Eimco Corp. v. Sims, 598 P.2d 538, 541 (Idaho 1979); Taylor Rental Corp. v. Ted Godwin Leasing, Inc., 681 P.2d 691, 695 (Mont. 1984); Reyna Financial Corp. v. Lewis Service Ctr., Inc., 429 N.W.2d 380, 383 (Neb. 1988); Tackett v. Mid-Continent Refrigerator Co., 579 S.W.2d 545, 548 (Tex. Civ. App. 1979).

This statutory language is based on the rationale that when

---

[1]In 1991, Code § 8.1-201(37) was amended, adding subsection (2)(d), which provides that a transaction creates a security interest if the lessee has the option to become the owner of the goods for no additional consideration or for nominal consideration upon compliance with the terms of the lease agreement.  However, since this subsection was not in effect at the time of the execution of the present contract, we do not consider that provision here.

the terms of the "lease" and option to purchase are such that the only sensible course of action for the "lessee" at the end of the term is to exercise that option and become the owner of the property, the "lease" becomes one intended to create a security interest under Code § 8.1-201(37).  Percival Construction Co., 532 F.2d at 172.  If a contract contains such an option, the agreement is conclusively presumed to be one intended as security, without reference to other facts from which the opposite conclusion might be drawn.  In re J.A. Thompson & Son, Inc., 665 F.2d 941, 947 (9th Cir. 1982); see Marhoefer Packing Co., Inc. v. Robert Reiser & Co., Inc., 674 F.2d 1139, 1142 (7th Cir. 1982); Morris v. Lyons Capitol Resources, Inc., 510 N.E.2d 221, 223 (Ind. Ct. App. 1987); Commercial Credit Equipment Corp. v. Parsons, 820 S.W.2d 315, 319 (Mo. Ct. App. 1991); Peco, Inc. v. Hartbauer Tool & Die Co., 500 P.2d 708, 709-10 (Or. 1972); FMA Financial Corp. v. Pro-Printers, 590 P.2d 803, 805 (Utah 1979).  Thus, as a matter of law, the present contract was a security agreement because it provided Garcia the option to purchase the backhoe for nominal consideration upon compliance with the terms of the agreement.[2]

---

[2] Enterprise argues that Code § 8.1-205(4), which provides that express terms of a contract control over an inconsistent course of dealing or usage of trade, supports its argument that the contract terms supersede the provisions of Code § 8.1-201(37).  As noted above, however, Article 9 applies to all

We next consider whether Garcia is entitled to recover damages for Enterprise's repossession and sale of the backhoe. Enterprise argues that Garcia is barred from recovering damages, because Garcia breached the agreement by failing to notify Enterprise in writing of its intent to purchase the backhoe, and by failing to pay $1 to exercise this option prior to the termination of the agreement. We disagree.

A breach of contract does not necessarily constitute a default under a security agreement. Moreover, when a default occurs, a secured creditor is required to comply with Article 9 of the UCC in taking possession and selling the secured property. See Code §§ 8.9-503 and -504.

The present agreement does not define the word "default," but specifies certain actions which would create a default by the debtor, including missed or late payments, bankruptcy, or attempts by Garcia to sell or encumber the property. All these events would have affected Enterprise's ability to recover timely and full compensation for the collateral. In contrast, Garcia's failure to notify Enterprise of its intent to "purchase" the (..continued)

transactions, regardless of their form, intended to create a security interest. Code § 8.9-102. Thus, the use of lease terms is not controlling of the issue whether the lease was intended as security. Morris, 510 N.E.2d at 223 n.1; Commercial Credit Equipment Corp., 820 S.W.2d at 319.

- 6 -

backhoe or to tender $1 did not affect Enterprise's right to receive payment for the backhoe.  Thus, we hold that Garcia's contract breach in failing to notify Enterprise and to pay $1 did not constitute a default nor affect Garcia's ownership interest in the backhoe.

While Garcia's failure to make timely payments constituted a default under the security agreement, this default does not bar Garcia's right to recover damages.  Enterprise violated Garcia's ownership rights in the backhoe by failing to comply with the requirements of Code § 8.9-504 in selling the secured property. Under that section, Enterprise was required to conduct a commercially reasonable sale of the equipment, with prior notice to Garcia, and to remit to Garcia any surplus of funds after satisfaction of the indebtedness secured by the agreement and deduction of Enterprise's reasonable expenses and attorney's fees.  See Code § 8.9-504.  Although Enterprise could have taken possession and sold the property in compliance with these requirements, Enterprise elected not to do so.  Thus, we conclude that Garcia is entitled to damages for Enterprise's wrongful seizure and sale of the backhoe.

For these reasons, we will reverse the trial court's judgment and remand the case for a determination of the amount of Garcia's damages arising from the wrongful seizure and sale of the backhoe.

Reversed and remanded.