**In re Barbara R. SMITH, Debtor.**

**No. 00–33091–T.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Oct. 31, 2000.

Pia Jessica North, Esq., Cowan, North & Lafrata, L.L.P., Richmond, VA, for Debtor.

Charles K. Seyfarth, Esq., Bowman & Brooke LLP, Richmond, VA, William Woodward Webb, Esq., The Edmisten & Webb Law Firm, Raleigh, NC, for Color-Tyme.

Robert E. Hyman, Esq., Richmond, VA, Chapter 13 Trustee.

Gregg R. Nivala, Esq., Office of the United States Trustee, Richmond, VA, Assistant United States Trustee.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

Hearing was held September 6, 2000, on creditor Mid–Atlantic Rental of Virginia, Inc.'s (dba ColorTyme) objection to confirmation of debtor's chapter 13 plan, and ColorTyme's motion to compel assumption or rejection of unexpired leases for personal property.[1] The court heard argument and at conclusion of hearing, took under advisement the matter of ColorTyme's objection to debtor's plan confirmation and ColorTyme's motion to compel assumption or rejection of unexpired leases under advisement.

---

1. The rental property at issue consists of an entertainment center and bedroom suite. Agreement number 00101239, dated August 7, 1999, governs the bedroom suite rental and agreement number 00101415, dated October 2, 1999, governs the entertainment center rental.

## I. Facts.

Debtor Barbara R. Smith filed her chapter 13 petition on May 26, 2000, and plan on June 12, 2000. ColorTyme objects to debtor's plan based upon debtor's default on the two rental contracts and the fact that debtor continues to retain the rental property without making payments. In contrast, debtor maintains that her plan is confirmable because she provides for payments under her plan of $20 per month for sixty months or a total payment of $1,200.00 to ColorTyme. Further, debtor asserts she is exercising her 40% early purchase option,[2] explicitly set forth in her rental agreement. Debtor's estimation of replacement value of the merchandise is $1,200.00; no external basis or foundation for this amount was provided in pleadings or argument.

## II. Pleadings and Procedural History.

ColorTyme initially objected to the plan by a *pro se* letter from the company president, Anthony M. Nickolas, on June 20, 2000. According to the letter, ColorTyme objected to the plan because debtor had a lease-purchase agreement for rental merchandise in which she was to pay rent in advance. Per ColorTyme's assertion, debtor elected not to renew the lease-purchase agreement when she ceased making regular payments, as scheduled under the agreement, and as a result, ColorTyme considered the agreement terminated. Further, by the terms of lease-purchase agreement, debtor was not considered an owner of merchandise until the end of the lease period. ColorTyme therefore asserts a right to repossess the property.

At hearing held August 16, 2000, on ColorTyme's objection to debtor's chapter 13 plan, the court continued the hearing and ColorTyme representative Eric Weidman was directed to obtain counsel prior to continued hearing or ColorTyme's objection would be overruled. On August 29, 2000, ColorTyme, by counsel, filed a combined pleading comprised of an objection to confirmation of debtor's chapter 13 plan and motion to compel assumption or rejection of leases. ColorTyme asserted secured creditor status and claimed debtor's contracts were true leases or statutorily recognized rental-purchase transactions that entitle ColorTyme to an order compelling debtor to assume her lease agreement and bring all lease payments current or to reject the lease agreement and immediately return the merchandise.

On September 11, 2000, ColorTyme, by counsel, submitted a memorandum of law in support of its motion to compel assumption or rejection of unexpired leases. ColorTyme asserted in its memorandum that these rental-purchase agreements were governed by the Virginia Lease–Purchase Agreement Act,[3] rather than Virginia Code § 8.1–201(37)(1). ColorTyme cited case law from foreign jurisdictions to support the proposition that courts have defined these types of agreements as true leases, rather than security agreements.

At September 6, 2000, hearing, debtor's counsel argued that the two contracts between ColorTyme and debtor were security agreements under Virginia law because of the early purchase options. On this basis, debtor then requested that ColorTyme's motion to compel assumption or rejection of unexpired leases be denied.

---

**2.** Each rental agreement provides in Paragraph 7 for an "Early Purchase Option" that reads as follows: "[i]f you wish to purchase the rental property you may do so at any time by the payment of 40% of the remaining Total Cost calculated at that time."

**3.** Va. Code §§ 59.1–207.17—59.1–207.33 (1988).

Debtor further requested that her chapter 13 plan be confirmed. Additionally, on a public policy basis, debtor argued that these contracts were ambiguously drafted and should be construed against the drafting party because they did not specify a particular time for payment regarding exercise of the early purchase option.

ColorTyme asserted at hearing that the contracts were true lease-purchase agreements under Virginia law. In response to debtor's argument regarding her assertion of her right to exercise the early purchase option, ColorTyme maintained that payment must be made at the exact time a client chooses to exercise the right to purchase, rather than at some later point in time, as determined unilaterally by the customer's preference or convenience.

## III. Discussion.

### A. Creditor's Motion to Compel Assumption or Rejection of Unexpired Leases.

 To determine whether to grant ColorTyme's motion to compel assumption or rejection of the unexpired leases under Bankruptcy Code § 365, the court must first determine whether the two agreements[4] between ColorTyme and debtor are unexpired leases or security agreements for purposes of applying § 365. Section 365 provides a basis for Color-Tyme's motion and objection only if the agreements at issue are found to be unexpired leases or executory contracts. This determination of classification (i.e., lease or security agreement) is made by referring to state law. *See In re Architectural Millwork of Virginia, Inc.,* 226 B.R. 551, 553 (Bankr.W.D.Va.1998). In particular, § 8.1–201(37)(1) of the Code of Virginia

defines a security interest in the following manner:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation . . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) *an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.*(emphasis added).

The statutory classification provision stresses the requirement that the court examine the facts of each case in characterizing a transaction. *See* VA. CODE § 8.1–201(37)(2). In accordance with this directive, after examination of the rental contracts, the court finds that they meet the requirements of security agreements set forth above in subsection (b) of § 8.1–201(37)(1). First, the agreements provide for the option to "rent to own" the property for no additional or nominal consideration. According to the terms of the contract, no additional payments are required after the scheduled weekly or monthly payments are completed for the respective time periods delineated in clause 5, with the exception of "sales tax or other fees which may be charged". (Exhibits A & B, Lease Purchase Agreements, Clause 5). In arguendo, even if the sales tax and fees are considered additional consideration under this statutory section, the total amount of consideration still satisfies the nominal classification allowed for by the statute. Second, in lieu of completing the scheduled

---

4. Upon examination of the two agreements, it is apparent that both have identical terms and can be treated similarly by the court in making this determination.

payments, the customer can exercise an ownership option and "choose to purchase . . . (the merchandise) for cash sooner" per the explicit invitation set forth in the contract. (Exhibits A & B, Lease Purchase Agreements, Clauses 5 & 7). This latter option is designated the "early purchase option" in clause 7. (Exhibits A & B, Lease Purchase Agreements, Clause 7).

Thus, the court finds that the customer can acquire ownership of the merchandise through one of various means presented in these rental agreements: first, through completion of the scheduled payment periods, or second, by payment for cash before the end of the scheduled payment period by exercising the early purchase option. (*See* Exhibits A & B, Lease Purchase Agreements, Clauses 5 & 7).[5] These purchase options meet the statutory definition for "security interest" under the Code of Virginia. Consequently, the court finds that these agreements are, in fact, security agreements according to § 8.1–201(37)(1) of the Code.[6]

Virginia case law provides a helpful interpretative gloss in completing this statutory analysis. The Supreme Court of Virginia has recently analyzed this issue, stating that, "[t]he plain language of the statute [§ 8.1–201(37)(1)] creates a security interest in property as a matter of law if the parties' contract allows the lessee to become the owner of the leased property for nominal or no additional consideration upon compliance with the terms

of the lease." *C.F. Garcia Enter. v. Enterprise Ford Tractor, Inc.*, 253 Va. 104, 107, 480 S.E.2d 497 (1997). In *C.F. Garcia Enterprises*, the Supreme Court of Virginia explained the mode of analysis for determining the lease or security agreement classification:

> This statutory language is based on the rationale that when the terms of the "lease" and option to purchase are such that the only sensible course of action for the "lessee" at the end of the term is to exercise that option and become the owner of the property, the "lease" becomes one intended to create a security interest under Code § 8.1–201(37) (citation omitted). *If a contract contains such an option, the agreement is conclusively presumed to be one intended as security,* without reference to other facts from which the opposite conclusion might be drawn.

253 Va. 104, at 108, 480 S.E.2d 497 (emphasis added).

Notwithstanding this controlling authority in Virginia cited above, the court notes ColorTyme's arguments, as well as statutory and case law authority supporting the proposition that these agreements are true leases, and that Virginia Code § 8.1–201(37) does not govern in this instance. It is ColorTyme's assertion that Virginia Code § 59.1–207.17, the Virginia Lease–Purchase Agreement Act, provides the controlling statutory authority for this

---

5. The cash price set forth in Clause 6 of the agreement is not an option available to debtor in this case, as a cash price is the price at which the lessor would have sold the property to the customer for cash on the date of the lease-purchase agreement. Here, debtor chose instead to commence making rental payments, rather than make a cash purchase at the onset.

6. In 1991, § 8.1–201(37) was amended to add subsection (2)(a)-(d). Section 8.1–201(37)(2)

sets out an additional two-prong conjunctive test with four alternatives listed in (a) through (d) for determining whether a transaction creates a security agreement. The court finds that analysis under this second subsection (specifically § 8.1–201(37)(2)(d)) yields the same result as analysis under the statute's first subsection. Therefore, the court finds it unnecessary to elaborate on the amended provisions of the statute, as the determination of security agreement remains unchanged.

rental transaction. However, the court finds that § 59.1–207.17 does not apply to this case. ColorTyme cited no Virginia case law to support application of the Lease–Purchase Agreement Act; moreover, ColorTyme's argument ignores the statutory provisions of § 8.1–201(37).

Further, while the court recognizes there is little, if any, Virginia case law to provide guidance on this topic, considerable disagreement also exists among bankruptcy court decisions[7] on the issue of whether these types of agreements are true leases governed by Bankruptcy Code § 365, or security agreements under §§ 722 or 1325(a)(5). As a result of the lack of guidance within Virginia and the considerable disagreement in existing case law surrounding these agreements, the court returns to the statutory authority in § 8.1–201(37) and the Virginia decisions that interpret that statute. Specifically,

the court is persuaded by *Architectural Millwork*,[8] in which the Bankruptcy Court for the Western District of Virginia specifies that Virginia statutory authority and case law govern the determination regarding whether a rent-to-own contract such ColorTyme's is a true lease or security agreement. The court is also convinced of the propriety of the classification of these ColorTyme contracts as security agreements, under the authority of the *C.F. Garcia Enterprises*[9] decision of the Supreme Court of Virginia.[10]

In summary, the court finds the two agreements between ColorTyme and debtor to be security agreements under existing statutory authority and case law. Further, § 365 is not applicable to the agreements because they are, by definition, not within its reach. Accordingly, the court denies ColorTyme's motion to

7. *See In re Arthur*, 1993 WL 812531 (Bankr. D.S.C.1993), *aff'd, South Carolina Rentals, Inc. v. Arthur*, 187 B.R. 502 (D.S.C.1995); *In re Burton*, 128 B.R. 807 (Bankr.N.D.Ala. 1989), *aff'd*, 128 B.R. 820 (N.D.Ala.1989); *In re Aguilar*, 101 B.R. 481 (Bankr.W.D.Tex. 1989); *Ledford v. NRM, Inc.*, 94 B.R. 103 (Bankr.S.D.Ohio 1988) (cases in these circuits holding that consumer lease-purchase agreements were security agreements, not true leases). *But see In re Street*, 214 B.R. 779 (Bankr.W.D.Pa.1997); *In re Rigg*, 198 B.R. 681 (Bankr.N.D.Tex.1996); *In re Meeks*, 210 B.R. 1007 (Bankr.S.D.Ill.1995); *In re Frady*, 141 B.R. 600 (Bankr.W.D.N.C.1991) (cases in these circuits holding that lease-purchase agreements were true leases, not security agreements).

8. 226 B.R. at 551.

9. 480 S.E.2d at 497.

10. Moreover, the court finds further support for its assertion that the agreements debtor entered into with ColorTyme are security agreements in *Collier on Bankruptcy*'s discussion of § 365 of the Bankruptcy Code. In relevant part, *Collier* states:

Consumer "Rent–to–Own" Transactions. Another common type of transaction, especially among low-income consumers, is known as a "rent-to-own" agreement, under which a consumer makes installment payments, usually weekly, for appliances or furniture. When the payments are completed, the consumer becomes the owner of the item for no additional consideration or nominal consideration. Courts have disagreed about whether these contracts should be treated as executory contracts or as secured debts. The better view is that they are disguised consumer credit sales, since they are promoted by the sellers and entered into by consumers based on the expectation that the consumer will become the owner of the property. Therefore, for bankruptcy purposes, they should be treated as secured debts, with the seller's security being the retention of title, rather than executory contracts. Treating such contracts as secured debts brings into play the various provisions for treatment of such debts, such as redemption under § 722 and payment of the allowed secured claim in a chapter 13 plan pursuant to § 1325(a)(5). 3 *Collier on Bankruptcy*, ¶ 365.02[1][b] (Lawrence P. King ed., 15th ed., rev.2000).

compel assumption or rejection of unexpired leases under § 365.

### B. Objection to Confirmation of Debtor's Plan.

ColorTyme's basis for objection to confirmation of debtor's plan consists solely of its argument grounded in § 365. Because the court deems the rental contracts to be security agreements, § 365 does not apply, nor does it provide ColorTyme with the statutory foundation needed for its objection to confirmation. Therefore, the court will overrule ColorTyme's objection to confirmation of debtor's chapter 13 plan.

A separate order will be entered.