In re Joseph E. BECKHAM, Debtor.

J. Michael Morris, Trustee,
Plaintiff–Appellant,

v.

Dealers Leasing, Inc., Defendant–
Appellee.

Dist. Co. No. 01–1218–WEB.
Bankruptcy No. 99–12124.
Adversary No. 00–5218.

United States District Court,
D. Kansas.

Jan. 3, 2002.

Ryan E. Hodge, Ray Hodge & Associates, LLC, Wichita, KS, for Debtor.

J. Michael Morris, Klenda, Mitchell, Austerman & Zuercher, LLC, Wichita, KS, for Plaintiff–Appellant.

James R. Gilhousen, Crockett & Gilhousen, Wichita, KS, for Defendant–Appellee.

**Memorandum and Order**

WESLEY E. BROWN, District Judge.

This is an appeal from a ruling of the Bankruptcy Court denying the Trustee's complaint to avoid a security interest. The issue concerns two commercial vehicle lease agreements entered into by the debtor with defendant Dealers Leasing, Inc. The Trustee alleged that the lease agreements were in fact disguised sales and security agreements and filed a complaint to avoid the allegedly unperfected security interests. The matter was submitted to the Bankruptcy Court upon stipulated facts. The Bankruptcy Court denied the complaint after concluding that the agree-

ments were true leases. The Trustee timely filed this appeal to the U.S. District Court. The court finds that oral argument would not assist in deciding the issues presented.

I.   Jurisdiction and Standard of Review.

Subject matter jurisdiction over the appeal is established by 28 U.S.C. § 158(a)(1). Review of a bankruptcy court's factual findings is subject to a clearly erroneous standard, while review of its conclusions of law is de novo. Fed. R. Bankr.P. 8013; Fed.R.Civ.P. 52.

II.   Facts.

On July 24, 1998, the Debtor entered into a Commercial Vehicle Lease Agreement ("Agreement No. 1") with defendant Dealers Leasing covering a 1991 Freightliner truck. Also on July 24, 1998, Dealers Leasing purchased the 1991 Freightliner from Kansas Truck Center for the sum of $37,000. On September 1, 1998, the State of Kansas issued a Certificate of Title to the 1991 Freightliner showing Dealers Leasing as the owner of the truck. The Certificate of Title shows Intrust Bank as a lienholder. This is because Dealers Leasing borrowed funds from Intrust to purchase the truck.

On October 13, 1998, the Debtor entered into a second Commercial Vehicle Lease Agreement ("Agreement No. 2") with Dealers Leasing covering a 1995 Freightliner truck. Also on October 13, 1998, Dealers Leasing purchased the 1995 Freightliner from Kansas Truck Center for the sum of $59,085. On November 2, 1998, the State of Kansas issued a Certificate of Title to the 1995 Freightliner showing Dealers Leasing as the owner of the truck.[1] The Certificate of Title shows

---

1.   The title for the 1995 truck lists the owner as:

DEALER LEASING INC C/O
BECKHAM JOE

Commercial Federal Bank as a lienholder. This is because Dealers Leasing borrowed funds from Commercial Federal to purchase the truck.

On May 28, 1999, the Debtor voluntarily surrendered both trucks to Dealers Leasing. The Debtor filed Chapter 7 bankruptcy on June 11, 1999.

The remaining economic life of each truck exceeded the original term of the respective leases.

The Commercial Lease Agreements, which are included as part of the record (Doc. 4, Exh. 10), are identical forms, but have different payment terms. The lease of the 1991 truck states that it is an "open end lease," for a term of 36 months, until August 1, 2001, with $289.29 due on delivery, "base monthly rentals" of $1121, and a "lease end residual value" of $6500. The lease of the 1995 truck states that it is an "open end lease," for a term of 48 months, until November 1, 2002, with $911.49 due on delivery, "base monthly rentals" of $1324 and a "lease end residual value" of $15,000.

Both leases provide that at the end of the lease, or in the event the lease is otherwise terminated, regardless of cause, the vehicle will be sold; and the sales price, the balance due on the lease, if any, and the residual value of the vehicle, will determine whether the lessee owes lessor additional monies, or whether the lessor owes lessee monies. This language, in what is commonly called a terminable rental adjustment clause (or "TRAC lease"), states:

At the termination of this lease, regardless of the cause, Lessor shall cause Vehicle to be sold at public or private sale, at Lessor's option, and the highest cash bid shall be accepted. Lessor and Lessee retain the right to bid at any such sale. If the Sales Price (after deducting reserve account balances) exceeds the Depreciated Value, the excess shall be paid to Lessee; if such net recovery is less than the Depreciated Value, Lessee shall pay such deficit to Lessor within ten (10) days of invoice date.

"DEPRECIATED VALUE" MEANS THE PRESENT VALUE OF THE UNPAID BALANCE OF THE TOTAL LEASE PAYMENTS FOR THE REMAINING TERM OF THIS LEASE PLUS THE LEASE END RESIDUAL VALUE, PLUS ANY OUTSTANDING BALANCES.

The leases also charge to the lessee any expenses lessor incurs in restoring the vehicles to "reasonable condition."

III. Lease v. Security Agreement.

■ The issue of whether an arrangement is a true lease or a sales and security agreement is governed by state law. See *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (the existence, nature and extent of a security interest in property is governed by state law). See also 11 U.S.C. § 101, Historical and Statutory Notes ("whether a . . . lease constitutes a security interest under the bankruptcy code will depend on whether it constitutes a security interest under applicable State or local law.").

Under Kansas commercial law, a "security interest" is an interest in personal property or fixtures which secures payment or performance of an obligation. K.S.A. 84–1–201(37). A "lease" means a transfer of the right to possession and use of goods for a term in return for consideration, but a sale or retention or creation of a security interest is not a lease. K.S.A. § 84–2a–103(j).

633 W 44TH ST S                    WICHITA KS 67217

Section 84–1–201(37) of the Kansas Commercial Code provides in part:

Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has the option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

A transaction does not create a security interest merely because it provides that (a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into, (b) the lessee assumes risk of loss of the goods or agrees to pay taxes, insurance, filing, recording, or registration fee, or service or maintenance costs with respect to the goods, (c) the lessee has an option to renew the lease or to become the owner of the goods, (d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal of the time the option is to be performed, or (e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

As the Bankruptcy Court noted, these standards focus on economic realities rather than on the parties' subjective intent or the labels placed upon the agreement. Employing the standards of § 84–1–201(37), the Bankruptcy Court first concluded that the agreements in question implicitly granted the lessee a right to terminate, although the court recognized that upon termination the lessee would be obligated to pay the remaining lease payments (discounted to present value), plus the stated "residual value," minus the proceeds from the sale of the vehicle. Under this formula, the lessee might owe a substantial amount or might owe nothing, depending upon how much the vehicle sells for upon termination. The Bankruptcy Court found that this arrangement constituted a right to terminate the obligation and said the trustee thus failed to meet the first part of the test in K.S.A. 84–1–201(37) for a disguised security agreement.

The Bankruptcy Court went on to say that even assuming the first part of the test were satisfied the court would still reject the trustee's remaining argument, which asserted that the agreements granted the debtor an option to purchase the vehicles for nominal or no additional consideration upon completion of the lease. See § 84–1–201(37)(d). The court noted that the "lease end residual value," which was the minimum figure the lessee could pay to obtain the vehicle at the end of the term, was $6,500 for the first truck and $15,000 for the second. The Bankruptcy Court concluded that these figures did not constitute "nominal consideration."

On appeal, the Trustee argues that the Bankruptcy Court erred in each of its findings. With respect to the court's finding that the debtor had a right to terminate, the trustee argues the court was incorrect because in the event of termination the lessee remained obligated to ensure that the lessor recouped the lease payments. With respect to the second part of § 84–1–201(37), the Trustee contends the court erred because the debtor had the option of purchasing the vehicles for "nominal additional consideration." With regard to the latter argument, the Trustee first points out that upon execution of the lease the debtor was obligated to ensure that the lessor recouped the "residual value" at the end of the lease period, so as a practical matter, the Trustee argues, the debtor could obtain the vehicle for no additional consideration beyond that for which he became liable at the execution of the lease. Citing *In re Zerkle Trucking Co.*, 132 B.R. 316 (Bankr. S.D.W.Va.1991). Second, the Trustee argues the Tenth Circuit has declared that a residual value option is nominal if the figure is less than 25% of the original list price. Citing *Percival Constr. Co. v. Miller Auctioneers, Inc.*, 532 F.2d 166 (10th Cir.1976) and *In the Matter of Fashion Optical*, 653 F.2d 1385 (10th Cir.1981).

IV. Discussion.

The *"lease v. security interest"* debate has given rise to a substantial amount of litigation over the years. In an effort to bring some clarity to the issue, most states, including Kansas, have recently adopted the Uniform Commercial Code's "new" test for distinguishing between these types of interests. See K.S.A. § 84–1–201(37).

a. Two-part Test of § 84–1–201(37).

■ Under the "new" test, a transaction is judged based on the facts of each case, but it is conclusively regarded as creating a security interest if the two-part test in K.S.A. § 84–1–207(37) is satisfied. The first part of that test is met if "the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee. . . ." The second part of the test is met if one of the conditions in subsections (a) through (d) of § 84–1–201(37) is present. The Trustee argues that subsection (d) is present in this case. Subsection (d) is met if "the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement."

There is some authority supporting the Trustee's argument with respect to the first part of the test. See e.g. *In re Taylor*, 209 B.R. 482 (Bankr.S.D.Ill.1997) (lease buyout provision did not constitute right to terminate obligation); *In re Architectural Millwork of Virginia, Inc.*, 226 B.R. 551, 555 (Bankr.W.D.Va.1998) (lease agreement similar to the instant case did not permit debtor to terminate obligation). But cf. *In re Owen*, 221 B.R. 56, 61 (Bankr.N.D.N.Y.1998) (option to terminate pursuant to "adjustment clause" was a right to terminate under UCC test). Even assuming the lessee's obligation to pay consideration in this case was not subject to termination, the court concludes that the condition in subsection (d) has not been shown under the stipulated facts before the court. Thus, the Bankruptcy Court correctly found that the two-part test of § 84–1–201(37) was not satisfied.

Under the agreements at issue, the lessor is required to sell the vehicles upon termination of the lease. The debtor, although he has no right to purchase the trucks, has the option of bidding at the

sale. The lessee is contractually obligated to make up any shortfall between the sale proceeds and the stated "residual value." Thus, if the lessee elects to purchase the trucks, he must pay at least the stated residual value ($6,500 and $15,000, respectively, for the two vehicles). The Trustee argues such payments would not be "additional consideration" because the lessee is already obligated to pay the residual value. Moreover, he contends the lessee would have no rational alternative but to purchase the vehicles: "The debtor-lessee has every incentive to 'purchase' the property for the residual value and he has no reasonable economic alternative, because in every circumstance, he will be liable for that amount." Aplt. Br. at 11.

Several courts have held that an arrangement which predictably gives the lessee no rational economic alternative but to purchase the goods at lease end (sometimes referred to as the "No Lessee in its Right Mind test") does not constitute the payment of additional consideration or is nominal consideration and is therefore a security agreement rather than a lease. See e.g., *In re Taylor*, 209 B.R. 482, 486 (Bankr.S.D.Ill.1997) ("Under this test, if only a fool would fail to exercise the purchase option, the option price is generally considered nominal and the transaction characterized as a disguised security agreement." (citations omitted)). There is a sound basis for this rule, but the Trustee has not shown that it applies in this case. Nothing about the arrangement of these leases compels the lessee to purchase the vehicles. For one thing, the Trustee overlooks altogether the question of fair market value. The lessee might reasonably expect to recoup the fair market value of a vehicle upon its sale to a third party. If the trucks' fair market value exceeded the residual value, the lessee might well choose to let the lessor sell the vehicles to a third party (or to the lessor itself) and collect any sale proceeds in excess of the residual value. Additionally, if the fair market value were approximately the same as the residual value, the lessee could rationally exercise or decline to exercise the option to purchase, depending on his particular circumstances or preferences. The lessee might be said to have some economic incentive to purchase the trucks if the vehicles had a negligible fair market value well below the "residual value." But the Trustee has not alleged or cited any evidence to show it was reasonably predictable that the stated residual values would vary significantly from the fair market value at the end of the lease term. Nor does the record otherwise indicate that as a practical matter the lessee no rational choice but to purchase the vehicles. The court thus rejects the Trustee's contention that the purchase options are a "Hobson's choice" leaving the debtor no alternative but to pay the residual value and take the vehicles.

The court likewise rejects the Trustee's argument that an election to purchase the vehicles by the lessor would not constitute the payment of "additional" consideration. Although the lessee was obligated to ensure that the lessor recouped the stated "residual value," the lessee could likely satisfy this obligation without furnishing any additional consideration if the fair market value of the vehicle was the same as or greater than the residual value.[2] In that event, the lessee could allow the vehicle to be sold to a third party and, although he would not obtain the vehicle, he would owe the lessor nothing. If, on the other hand, the lessee elected to purchase

2. As the Bankruptcy Court noted, a "terminable rent adjustment clause" like the one at issue gives the lessee a financial incentive to maintain the vehicle in good condition for the term of the lease.

the vehicle, he would have to come up with the consideration and would have to pay the lessor at least the stated residual value, if not more. In the court's view, this arrangement requires the lessee to pay "additional" consideration to obtain the vehicle.

Finally, the court rejects the Trustee's contention that *Percival Constr. Co. v. Miller Auctioneers, Inc.,* 532 F.2d 166 (10th Cir.1976) and its progeny require application of a bright-line rule that an option to purchase for less than 25% of the original purchase price constitutes nominal consideration.[3] To the extent Percival endorsed a bright-line rule, the court concludes it has been superseded by the amendments to § 84–1–201(37), including the following provision: "For purposes of this subsection (37):(a) Additional consideration is not nominal if ... (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed."[4] A leading treatise on commercial law concludes that this provision "disavows percentage tests." See 4 White & Summers, Uniform Commercial Code § 30–3 (4th ed.). The court agrees that § 84–1–201(37), ¶ 2 subsection (d) requires more than just a percentage comparison of the purchase option price to the original purchase price. An option price of less than 25% may represent fair market value for certain goods and may constitute more than a nominal sum.[5]

In the instant case the agreements provided for purchase of the vehicles at a stated "residual value" rather than fair market value. As was stated above, no suggestion or showing has been made that the stated residual values varied significantly from the reasonably predictable fair market value. Nor is there any question but that vehicles had economic life remaining at the expiration of the lease terms, although the stipulated facts do not specify the extent of that economic life. Under the facts before the court, it cannot be said that 25% and 17% of the original purchase price of the vehicles are nominal sums; to the contrary, they represent substantial payments ($15,000 and $6,500) that may well have reflected the anticipated fair market value of the goods. See *In re Architectural Millwork of Virginia, Inc.,* 226 B.R. 551, 555 (Bankr.W.D.Va.1998) (residual value clause constituted a fair estimate of the truck's value; option to purchase for $9,625 was not nominal consideration).

b. "Economic realities test".

Aside from the two-part test in § 84–1–201(37), the Trustee contends a consider-

---

**3.** If such a rule were applied here, one of the transactions would be characterized as a true lease and the other would not. The residual value of the 1995 Freightliner ($15,000) is 25.39% of the original list price ($59,085), while the residual value of the 1991 Freightliner ($6,500) is 17.57% of the original list price ($37,000).

**4.** The provision continues: "Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised[.]"

**5.** The court concludes the "fair market value" provision itself must be read in conjunction with the other provisions of § 84–1–201(37). Thus, an option to purchase for "fair market value" could be nominal in some circumstances, such as where the economic life of the goods was designed to be used up during the lease term and resulting "fair market value" is negligible, or where as a practical matter there is no market for the goods in question. See e.g., *In re Owen,* 221 B.R. 56, 61 (Bankr.N.D.N.Y.1998) (option to purchase for fair market value creates an inference that the consideration is not nominal unless it can be shown that the fair market value is negligible).

ation of all the circumstances shows that the agreements are disguised sales and security agreements. Among other things, the Trustee points out the leases cannot be terminated by the debtor; the debtor is responsible for all taxes, fees and maintenance; the debtor bears the risk of loss; the lessor disclaims all warranties; and the lessor, like a traditional lender, is guaranteed to receive all payments provided for in the agreement but nothing more and nothing less. In other words, the Trustee argues, the lessor has no "entrepreneurial stake" in the vehicles, but stands in the role of a traditional lender holding a security interest in the vehicles. Citing 4 *White & Summers, Uniform Commercial Code*, Pp. 720–21 (4th ed.).

The Trustee's argument is to some degree undermined by the recent amendments to the Kansas commercial code. In 1998, the legislature adopted a specific provision on terminal rent adjustment clauses which provides in part: "Notwithstanding any other provision of law, an agreement involving the leasing of a motor vehicle or trailer does not create a sale or security interest solely because the agreement provides for an increase or decrease adjustment in the rental price ... based upon the amount realized upon sale or other disposition of the motor vehicle or trailer following the termination of the lease." K.S.A. § 84–2a–110.[6] Additionally, the "new" test of § 84–1–201(37) makes explicit that a transaction does not create a security interest merely because it provides that the lessee assumes the risk of loss and agrees to pay taxes, insurance, and maintenance costs with respect to the goods.

The lease agreements in this case purport to be—and appear to meet the requirements of—finance leases under Arti-

cle 2A of the commercial code. See K.S.A. § 84–2a–103(g). As such, Dealers Leasing's principal role in the transaction was to provide financing, as the Trustee argues, but this fact alone does not indicate the agreements were actually security agreements. Although many attributes of finance leases were considered indicators of a security interest under the "old" test, the amendments to § 84–1–201(37) and Article 2a of the Kansas commercial code recognize that such attributes are as consistent with a true lease as with a security agreement.

The court has considered all of the circumstances surrounding these transactions. Although some factors could be considered indicative of a security interest, substantial evidence indicates that the agreements are in fact true leases, and the Bankruptcy Court's finding to that effect is not clearly erroneous. Foremost among this evidence is the matter of the residual value of the vehicles. It is undisputed that the economic life of the trucks extends beyond the lease terms. See FF & E and the True Lease Question: Article 2A and Accompanying Amendments to UCC Section 1–201(37), 7 Am. Bankr.Inst. L.Rev. 517, E.C. Hochstadter Dicker & J. Campo (Winter 1999 Ed.) ("Courts interpreting both Old and New UCC 1–201(37) have consistently held that the principal characteristic of a lease, which distinguishes it from a secured transaction, is that it allows the lessee the right to use the property with an attendant opportunity to return the property to the lessor while it still has 'substantial useful economic life.' "). The lessee cannot obtain these vehicles for a nominal sum at the end of the lease terms but must make substantial payments to acquire them. (The lessor likewise has an option to purchase the vehicles). There is

---

**6.** This section further provides that it "clarifies existing law and shall be given effect in all court cases brought on or after the effective date of this act [Apr. 9, 1998]."

no evidence that the "lease end residual value" was set at a price less than the anticipated fair market value of the vehicles. Cf. K.S.A. § 84–1–201(37), 3rd ¶, subsection (e) ("A transaction does not create a security interest merely because it provides that . . . the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods. . . ."). See also *In re Murray,* 191 B.R. 309, 316 (Bankr.E.D.Pa. 1996) (a fixed price purchase option does not create a security interest where the price is equal to or greater than the reasonably predictable fair market value). This arrangement does not appear to be one that would likely create any significant equity by the lessor in the vehicles. *Cf. In re Architectural Millwork of Virginia, Inc.,* 226 B.R. 551, 557 (Bankr.W.D.Va. 1998) (a residual value that is approximately equal to anticipated fair market value indicates that the debtor would not acquire an equitable interest in the vehicle, and that the agreement was in fact a true lease). In a practical sense, the lessor retains the reversionary interest in the vehicles. Additionally, there is no evidence that the rental payments required by these leases were excessive as compared to typical lease payments. Nor is there any evidence that the debtor was required to pay a substantial, non-refundable security deposit. Finally, no showing has been made that the present value of the lease payments equals or exceeds the purchase price of the vehicles. Cf. *In re Owen,* 221 B.R. 56, 63–64 (Bankr.N.D.N.Y. 1998). In sum, the court concludes that the record supports the Bankruptcy Court's determination that these agreements are true leases. In view of this finding, the court need not address the Trustee's additional argument that the alleged security interests created by the agreements were unperfected.

V. Conclusion.

The judgment of the Bankruptcy Court is AFFIRMED.