**In re Gregory James DAMRON, Debtor.**

No. 01–35541.

United States Bankruptcy Court, E.D. Tennessee.

March 6, 2002.

John P. Newton, Jr., McGehee & Newton, P.C., Esq., Knoxville, TN, for the Debtor.

W. Neal McBrayer, Esq., Candice L. Reed, Esq., Miller & Martin, LLP, Nashville, TN, Catherine Harrison, Esq., Chattanooga, TN, for FirstFinance, Inc.

## MEMORANDUM ON OBJECTION TO CONFIRMATION

RICHARD S. STAIR, Jr., Bankruptcy Judge.

On February 20, 2002, the court held a hearing on confirmation of the Debtor's Chapter 13 Plan and on the December 17, 2001 objection to confirmation filed by FirstFinance, Inc. (FirstFinance). At issue is whether FirstFinance is a secured creditor whose claim is subject to cramdown under 11 U.S.C.A. § 1325(a)(5)(B)(ii) (West 1993) or whether the Debtor's obligation to FirstFinance arises under a lease and must therefore be dealt with in the Debtor's Plan in the manner required by 11 U.S.C.A. § 1322(b)(7) (West 1993).

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L), (O) (West 1993).

### I

On May 5, 1998, the Debtor and FirstFinance executed a Commercial Transportation Lease Agreement (Agreement) involving a 1997 Freightliner truck. The Debtor's Chapter 13 Plan, filed on November 8, 2001, treats FirstFinance as a secured creditor by proposing a cramdown of the Freightliner's value.

According to the Debtor, the Agreement is a lease-purchase arrangement, making FirstFinance a secured creditor. FirstFinance, however, contends that the Agreement is a true lease that is subject to the provisions of 11 U.S.C.A. § 365 (West 1993 & Supp.2001).[1] *See Coble Sys., Inc. v.*

---

1. Alternatively, FirstFinance initially argued that, if it is found to be a secured creditor, the Plan violates 11 U.S.C.A. § 1325(a)(5)(B) by paying less than the allowed secured amount of its claim. This argument was withdrawn by FirstFinance's counsel at trial.

*Coors of the Cumberland, Inc. (In re Coors of the Cumberland, Inc.).* 19 B.R. 313, 315–16 (Bankr.M.D.Tenn.1982) ("The conditional sale-lease cases raise complex issues which have plagued the courts for many years."); *see also In re Architectural Millwork of Va., Inc.,* 226 B.R. 551, 554 n. 2 (Bankr.W.D.Va.1998) ("Unfortunately, the Court finds that the majority of the earlier cases ... have produced confusing results."). If FirstFinance is correct, the Debtor's Plan does not provide for assumption of the Agreement as required by 11 U.S.C.A. § 1322(b)(7) and thus does not meet the confirmation requirement of 11 U.S.C.A. § 1325(a)(1) (West 1993) ("[T]he court shall confirm a plan if—(1) the plan complies with the provisions of this chapter . . . .").

## II

The Agreement provides, at Section 13, that "[t]he parties intend that this agreement be a true lease." At issue, however, is the Terminal Rental Adjustment Rider executed with the Agreement, which obligates the Debtor at the end of the five-year term to either: (1) purchase the Freightliner for its "Estimated Residual Value" of $16,500.00,[2] or; (2) pay to First-Finance any shortfall if the actual amount received at a commercially reasonable sale does not equal the Estimated Residual Value. Conversely, if the sales price exceeds the Estimated Residual Value, any excess would go to the Debtor.[3]

The *Coors* court held that a series of Truck Lease and Service Agreements containing a similar residual value provision were in fact security agreements rather than true leases. *See Coors,* 19 B.R. at 314, 317 n. 2. The *Coors* analysis considered TENN. CODE ANN. § 47–1–201(37), which is no longer a part of the Tennessee Code but was in effect at the time the present Agreement was signed. Section 47–1–201(37) provided in material part:

(B) Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) the original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) the lessee has an option to become the owner of the goods for no additional consideration or nominal

---

**2.** The Terminal Rental Adjustment Rider provides that "Lessor and Lessee acknowledge [that the Estimated Residual Value] represents a reasonable current estimate of the fair market value of the Vehicles [sic] at the end of the Lease Term." For purposes of comparison, the Debtor's Plan presently values the Freightliner at $17,000.00. The final payment under the Agreement will be due on May 15, 2003.

**3.** Agreements of the kind now at issue are sometimes referred to as "open-ended leases." For a discussion of the differences between open— and closed-ended leases, see *Adelman v. General Motors Acceptance Corp. (In re Tulsa Port Warehouse Co., Inc.),* 4 B.R. 801, 802–04 (N.D.Okla.1980) (primary distinctions are the termination provisions).

additional consideration upon compliance with the lease agreement,

(C) A transaction does not create a security interest merely because it provides that:

(a) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,

(b) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service of maintenance costs with respect to the goods,

(c) the lessee has an option to renew the lease or to become the owner of the goods,

(d) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or

(e) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

(D) For purposes of this subsection (37):

(x) Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;

(y) "Reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into[.]

TENN. CODE ANN. § 47–1–201(37)(B)–(D)(y) (1998). Although § 47–1–201(37) is not presently a part of the Tennessee Code (it was eliminated in the July 2001 statutory revision), its factors are consistent with the lease/security case law of Tennessee and other jurisdictions and are analyzed by courts in a balancing-test fashion. *See, e.g., Architectural Millwork*, 226 B.R. at 555–57.

## III

Section 47–1–201(37)(B) defined four circumstances that *per se* created a security interest. The court does not find any of those circumstances present in this case. No evidence indicates that the five-year Agreement term is equal to or greater than the Freightliner's economic life span. *See* TENN. CODE ANN. § 47–1–201(37)(B)(a) (1998). The Debtor does not have the option to renew the Agreement, *see* TENN. CODE ANN. § 47–1–201(37)(B)(c) (1998), or to become the owner of the Freightliner for "no additional consideration or nominal additional consideration." *See* TENN. CODE ANN. § 47–1–201(37)(B)(d) (1998); TENN. CODE ANN. § 47–1–201(37)(D)(x) (1998) (Consideration is not nominal "when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed."); *see also Architectural Millwork*, 226 B.R. at 555 ($9,625.00 residual

value was not nominal consideration for a Freightliner, finding arrangement to be a true lease). As noted, the Terminal Rental Adjustment Rider provides that "Lessor and Lessee acknowledge [that the Estimated Residual Value] represents a reasonable current estimate of the fair market value of the Vehicles [sic] at the end of the Lease Term."

Nor does the court find that the Agreement in effect binds the Debtor to take ownership of the Freightliner. *See* TENN. CODE ANN. § 47–1–201(37)(B)(b) (1998); *Coors*, 19 B.R. at 316 ("The decisive factor in distinguishing a lease intended for security from a true lease is whether the instrument in question will ultimately result in the purported lessee gaining *de facto* ownership of the subject matter of the lease."). According to the Debtor, the Estimated Residual Value is so high that he is in essence compelled to purchase the Freightliner at the end of the five-year term. However, the Debtor himself acknowledges that the truck has a present value of at least $17,000.00.[4] Comparing that valuation to the $16,500.00 projected under the Agreement,[5] the Debtor has not established that the Estimated Residual Value will in fact compel purchase of the

Freightliner. Instead, the court finds the Estimated Residual Value to be a reasonable figure designed to encourage maintenance of the vehicle over the term of the Agreement.

Lastly, of the factors set out in TENN. CODE ANN. § 47–1–201(37)(C) (1998), only one possibly favors the Debtor, and that is his responsibility for taxes, insurance, and maintenance. *See* TENN. CODE ANN. § 47–1–201(37)(C)(b) (1998); *Coors*, 19 B.R. at 319. However, those are all responsibilities frequently borne by lessees. *See Jahn v. M.W. Kellogg Co., Inc. (In re Celeryvale Transp., Inc.)*, 822 F.2d 16, 19 (6th Cir.1987); *Architectural Millwork*, 226 B.R. at 556. Further, the court notes that title in the Freightliner was retained by FirstFinance and no certificate of title was issued to the Debtor. *See Celeryvale Transp.*, 822 F.2d at 19 (Lessor's retention of title and failure to make UCC–1 filing "refutes the contention of a masked sale.").[6]

In sum, the present Commercial Transportation Lease Agreement is a true lease.[7] As such, the Debtor may not employ § 1325(a)(5)(B) to cramdown its obligation to FirstFinance. Confirmation of

---

4. *See supra* n. 2.

5. As noted, the Estimated Residual Value is projected for the end of the Agreement term, which is less than fifteen months from the present time. *See supra* n. 2.

6. Here, title to the 1997 Freightliner truck, a motor vehicle, is governed by Tennessee's certificate of title laws. *See* TENN. CODE ANN. § 55–3–114 (1998). The Certificate of Title designates FirstFinance as the owner of the truck. *See* Exhibit 3.

7. As noted above, the *Coors* court held that a series of Truck Lease and Service Agreements containing a similar residual value provision were in fact security agreements rather than true leases. However, this court need not

follow any particular precedent, as lease-security distinctions must always be "determined by the facts of each case." *See* TENN. CODE ANN. § 47–1–201(37)(B) (1998).

Additionally, *Coors* may be distinguished on several grounds. In *Coors*, the parties stipulated that most of the "leases" were in fact installment sales contracts. *See Coors*, 19 B.R. at 314, 317 n. 2. As for the "leases" that were not stipulated, the *Coors* court found that the option to purchase was for nominal value, which is not the case with the present Agreement. *See id.* at 318. *Coors* also gave weight to the "lessee's" responsibility for taxes, insurance, and maintenance. *See id.* at 319; *but see Celeryvale Transp.*, 822 F.2d at 19 (Taxes, insurance, and maintenance are responsibilities commonly shouldered by lessees.).

the Debtor's Chapter 13 Plan must therefore be denied. The court will, however, allow the Debtor time within which to file a modified plan to provide for the treatment of the Agreement with FirstFinance in the manner required by 11 U.S.C.A. § 1322(b)(7).

An order consistent with this Memorandum will be entered.

### ORDER

For the reasons stated in the Memorandum on Objection to Confirmation filed this date, the court directs the following:

1. The "Objection of FirstFinance, Inc. to Plan of Reorganization Filed by Gregory James Damron" filed by FirstFinance, Inc. on December 17, 2001, is SUSTAINED. Confirmation of the Debtor's Chapter 13 Plan filed November 8, 2001, is DENIED.

2. The Debtor will have ten (10) days to modify his Chapter 13 Plan to provide for treatment of the May 5, 1998 Commercial Transportation Lease Agreement with FirstFinance, Inc. in the manner required by 11 U.S.C.A. §§ 365 and 1322(b)(7) (West 1993 & Supp.2001).

3. A hearing will be held on April 3, 2002, at 9:00 a.m., in Bankruptcy Courtroom 1–C, First Floor, Howard H. Baker, Jr. United States Courthouse, Knoxville, Tennessee, to determine whether the Debtor's plan, if modified, should be confirmed or, if not modified, whether the Debtor's case should be dismissed or converted to Chapter 7.

SO ORDERED.